UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
____

RICKY THOMAS,

        Petitioner,               Case No. 1:21-cv-610

v.                                         Honorable Ray Kent

GARY MINIARD,

        Respondent.
_____/

**OPINION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner has consented to the conduct of all proceedings in this case, including entry of a final judgment and all post-judgment matters, by a United States Magistrate Judge. (ECF No. 4.) Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436–37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

## Discussion

**I.    Factual allegations**

Petitioner Ricky Thomas is incarcerated with the Michigan Department of Corrections at the Saginaw County Correctional Facility (SRF) in Freeland, Saginaw County, Michigan.  On March 19, 2018, following a four-day jury trial in the Ingham County Circuit Court, Petitioner was convicted of second-degree murder, in violation of Mich. Comp. Laws § 750.317.[1]  On April 25, 2018, the court sentenced Petitioner to a prison term of 27 years, 6 months to 60 years.

The Michigan Court of Appeals summarized the facts underlying Petitioner's conviction as follows:

> The victim, Lorenza McKinney, resided at the Capitol Commons apartment complex in Lansing.  Between 1:30 and 3:00 p.m. on January 6, 2017, another resident who lived in the apartment below the victim's heard repeated "loud, banging" sounds coming from the victim's apartment.  The neighbor called the police to complain about the noise which then stopped for a while but resumed at around 10:00 p.m., prompting him to again call the police.  Two police officers responded and went to the victim's apartment to check on the occupants at about 10:15 p.m.  Defendant answered the door but would not come out or let the officers inside.
>
> Behind defendant, the officers saw a man, later identified as the victim, lying unconscious on the living room floor.  The officers asked defendant to leave the apartment so that they could check on the victim's welfare, but he refused. When an officer tried to physically remove defendant from the doorway, a scuffle ensued during which defendant reached toward the officer's face which prompted him to strike defendant in the face.  The other officer twice deployed his Taser without effect.  Additional officers arrived and eventually subdued defendant and took him into custody. The officers unsuccessfully performed cardiopulmonary resuscitation on the victim who was pronounced dead about one hour after the police arrived at his apartment.

(Mich. Ct. App. Op., ECF No. 1-1, PageID.19–20.)

---

[1] The jury also convicted Petitioner of resisting or obstructing a police officer.  The court sentenced Petitioner to time-served for that offense.  Petitioner is no longer in custody for that conviction; thus, it is not at issue in this habeas corpus proceeding.

Petitioner, with the assistance of counsel, appealed his conviction to the Michigan Court of Appeals.  By opinion issued November 26, 2019, the court of appeals rejected Petitioner's challenges to his conviction and affirmed the trial court.  Petitioner then filed a *pro per* application for leave to appeal to the Michigan Supreme Court.  That court denied leave by order entered April 29, 2020.  (Mich. Order, ECF No. 1-2, PageID.27.)  Petitioner then timely filed his habeas corpus petition in this Court, raising one issue:

    I.      The evidence was insufficient to establish second-degree murder.

(Pet., ECF No. 1-3, PageID.28.)  Petitioner raised that issue in the Michigan Court of Appeals and the Michigan Supreme Court.

## II.    AEDPA standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693–94 (2002).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).  "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision."  *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)) (internal quotation marks omitted)).  This standard is "intentionally difficult to meet."  *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

3

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts.  *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002).  Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court.  *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011).  Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits.  *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts.  *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06).  "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'"  *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity.  *Stermer*, 959 F.3d at 721.  "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations."  *Yarborough*, 541 U.S. at 664.  "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims."  *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

4

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721. Then, the petitioner's claim is reviewed *de novo*. *Id*. (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

### III.  Sufficiency of the evidence

Petitioner contends that there was insufficient evidence to permit the jury to find him guilty of second-degree murder beyond a reasonable doubt. In *Jackson v. Virginia*, 443 U.S.

5

307 (1979), the Supreme Court announced the following standard for resolving sufficiency claims: the court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 319.  The *Jackson* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id*.  Witness credibility remains the province of the jury, *see Herrera v. Collins*, 506 U.S. 390, 401–02 (1993), and an attack on witness credibility constitutes a challenge to the quality, but not the sufficiency of the government's evidence. *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002).  The habeas court need only examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196–97 (6th Cir. 1988).

Moreover, because both the *Jackson* standard and AEDPA apply to Petitioner's claims, "the law commands deference at two levels in this case:  First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan Court of Appeals' consideration of the trier-of-fact's verdict, as dictated by AEDPA." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008).  This standard erects "'a nearly insurmountable hurdle'" for petitioners who seek habeas relief on sufficiency-of-the-evidence grounds. *Davis*, 658 F.3d at 534 (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

The Michigan Court of Appeals applied the following standard to resolve Petitioner's sufficiency claim:

> When determining whether the prosecution presented sufficient evidence to support a conviction, this Court reviews the evidence in a light most favorable to

the prosecution and determines whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. [*People v Bailey*, 310 Mich App 703, 713; 873 NW2d 855 (2015)]. "[A] reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *Id*. In *Bailey*, this Court explained:

> the prosecutor is not obligated to disprove every reasonable theory consistent with innocence to discharge its responsibility; it need only convince the jury in the face of whatever contradictory evidence the defendant may provide. Further, circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime. [*Id*. (quotation marks, alterations, and citations omitted.]

"The test to determine whether a verdict is against the great weight of the evidence is whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *People v Anderson*, 322 Mich App 622, 632; 912 NW2d 607 (2018) (quotation marks and citation omitted). "It is the province of the jury to determine questions of fact and assess the credibility of witnesses." *Id*.

(Mich. Ct. App. Op., ECF No. 1-1, PageID.22–23.) The court applied the standard as follows:

> The elements of second-degree murder are "(1) a death, (2) the death was caused by an act of the defendant, (3) the defendant acted with malice, and (4) the defendant did not have lawful justification or excuse for causing the death." *People v Smith*, 478 Mich 64, 70; 731 NW2d 411 (2007). "Malice is defined as 'the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and wilful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm.'" *People v Werner*, 254 Mich App 528, 531; 659 NW2d 688 (2002) (citation omitted). "The prosecution is not required to prove that the defendant actually intended to harm or kill. Instead, the prosecution must prove the intent to do an act that is in obvious disregard of life-endangering consequences." *Id*. (quotation marks and citations omitted). Malice may be inferred from facts in evidence, including the use of a dangerous weapon. *People v Bulls*, 262 Mich App 618, 627; 687 NW2d 159 (2004). "[M]inimal circumstantial evidence will suffice to establish the defendant's state of mind, which can be inferred from all the evidence presented." *Kanaan*, 278 Mich App at 622.
>
> Defendant argues that the evidence did not establish "how" the victim suffered blunt force trauma or that defendant acted with malice aforethought or intended to kill or cause great bodily harm to the victim. Thus, he argues, the evidence lacked sufficiency to support his conviction of second-degree murder. As an initial matter, malice, not malice aforethought, is an element of second-degree murder. We disagree with defendant that the evidence did not suffice to support the jury's verdict. Although the evidence was largely circumstantial, a rational jury

7

could properly find that the elements of the offense were proven beyond a reasonable doubt, including malice. *People v Cain*, 238 Mich App 95, 117; 605 NW2d 28 (1999). Moreover, the verdict was not against the great weight of the evidence.

Defendant does not dispute that the first or fourth elements of the offense were established at trial, but challenges the evidence pertaining to cause and malice. Although there were no eyewitnesses to the offense, the circumstantial evidence established these elements beyond a reasonable doubt. "Even in a case relying on circumstantial evidence, the prosecution need not negate every reasonable theory consistent with the defendant's innocence, but merely introduce evidence sufficient to convince a reasonable jury in the face of whatever contradictory evidence the defendant may provide." *People v Fletcher*, 260 Mich App 531, 560; 679 NW2d 127 (2004). In this case, the prosecution established that defendant and the victim were alone in the victim's apartment and that the victim was unresponsive when the police arrived. The prosecution also established that the victim's neighbor heard several loud, banging noises coming from the victim's apartment which prompted him to call the police. Because the victim lay unresponsive and the police found only defendant in the apartment when they arrived, the jury could conclude that defendant caused the victim's injuries. Evidence established that the victim died from multiple blunt force trauma. When the police arrived on the scene, they observed blood on defendant's clothing. The fact that the victim and defendant were alone in the apartment before the victim's death supported the jury's conclusion that defendant inflicted the trauma that caused the victim's death.

Further, we find no merit to defendant's argument that the victim could have died from drunkenness and alcohol poisoning which he contends establishes that the prosecution failed to prove he caused the victim's death. The record simply does not support this argument. The medical examiner provided unrebutted testimony that alcohol did not constitute a factor in the victim's death and that the victim died from multiple blunt force trauma. Additionally, the prosecution presented evidence of defendant's shirt and shoes that were found to have the victim's blood on them. The jury could reasonably conclude that defendant inflicted the blunt force trauma that caused the victim's death.

Regarding malice, defendant argues that the evidence did not establish that he intended to kill or cause great bodily harm, or that he acted in wanton and willful disregard of the likelihood that his behavior would cause the victim's death or great bodily harm. The record reflects that the prosecution presented sufficient circumstantial evidence from which a reasonable jury could find that defendant acted with malice when he inflicted the injuries that caused the victim's death. The jury could infer that the banging noises from the victim's apartment correlated with defendant's infliction of blunt force trauma on the victim. The jury could reasonably conclude from the evidence of the repeated and extended violent noises and the condition of the victim at the time of the police arrival and investigation, that defendant acted with malice and intended to cause the victim great bodily harm. The medical examiner testified that the victim's assailant struck him with sufficient

> force to cause multiple blunt force trauma, including lacerations of his pancreas and his mesentery, internal injuries that proved fatal. A reasonable jury could conclude from this evidence that the force necessary to inflict these injuries demonstrated that defendant knowingly disregarded the risk that his action would likely cause death or great bodily injury to the victim.

(Mich. Ct. App. Op., ECF No. 1-1, PageID.23–25.)

Although the court of appeals cited state authority for the standard, it is functionally identical to the *Jackson* standard. Moreover, the appellate court applied the standard exactly as Jackson directs: the court identified the essential elements of the offense and reviewed the evidence to determine if, considered in a light favorable to the prosecution, the evidence could support finding Petitioner guilty beyond a reasonable doubt.

Petitioner does not challenge the court of appeals' description of the evidence that supported his conviction. Instead, he invites this Court to view the evidence in a different light:

> In this case, the evidence fails to establish second degree murder. No evidence established how McKinney suffered blunt force trauma. No evidence supported finding beyond a reasonable doubt that Petitioner possessed malice aforethought by intending to do an act to result in death or in great and serious bodily injury or knowlingly [sic] created a high risk of death with the knowledge that it probably would cause death. Petitioner had returned from the store and was drinking a cold beer. He was oblivious his friend, McKinney, had been killed. He thought she maybe had passed out in the living room from inebriation, which is the state he would find her on occasion. Once the police arrived, Petitioner hugged his friend, foolishly seeking to prove to them that his friend was unharmed, and ended up getting the victim's blood on his clothing.

(Pet., ECF No. 1-3, PageID.28.) Petitioner's argument invites the Court to turn the *Jackson* standard on its head. He asks the Court to view the evidence in a light that favors him and to draw inferences in his favor.[2]

---

[2] Moreover, Petitioner asks the Court to evaluate that evidence against an element that is not required under state law: malice aforethought. It is the prerogative of the state to define the elements of the crime and that definition binds the federal courts. *See Johnson v. United States*, 559 U.S. 133, 138 (2010) ("We are, however, bound by the Florida Supreme Court's interpretation of state law, including its determination of the elements . . . ."); *Jackson*, 443 U.S. at 324 n.16 ("The respondents have suggested that this constitutional standard will invite intrusions upon the power of the States to define criminal offenses. Quite to the contrary, the standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law."). This Court is bound, therefore, by the state

Even if Petitioner can conjure up an interpretation of the evidence that supports his argument that he did not commit second-degree murder, that does not mean the evidence, viewed in a light that favors the prosecution, was insufficient. *Jackson* holds that it is the factfinder's province to draw reasonable inferences from basic facts to ultimate facts. 443 U.S. at 319. In *Coleman v. Johnson*, 566 U.S. 650 (2012), the Supreme Court provided guidance "in determining what distinguishes a reasoned inference from 'mere speculation.'" *Id*. at 655. The Court described a reasonable inference as an inference that a rational factfinder could make from the facts.

Certainly, the inferences identified by the trial court—that Petitioner inflicted the blunt force trauma on the victim because he was alone with the victim in the apartment at the time the neighbor heard sounds consistent with a violent struggle—rationally flow from the underlying facts. The inferences need not be compelled by the facts. The inferences need not even be more likely than not; they simply need to be rational. *Id*. at 656. In Petitioner's case, however, the inferences identified by the court of appeals are compelling. The jurors obviously drew those inferences, the trial judge drew those inferences, and this Court would draw the same inferences.

To succeed in his challenge Petitioner cannot simply reject the identified inferences; he must show that they are irrational. He has not done so. Therefore, Petitioner has failed to show that the state court's conclusion regarding the sufficiency of the evidence is contrary to, or an unreasonable application of, clearly established federal law and he is not entitled to habeas relief.

---

court's conclusion that it is "malice," not "malice aforethought," that the prosecutor must prove. The extraordinary remedy of habeas corpus lies only for a violation of the Constitution. 28 U.S.C. § 2254(a). Petitioner's argument that the prosecutor must prove more under state law is not cognizable on habeas review.

**IV.     Certificate of Appealability**

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.*  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*  "A petitioner satisfies this standard by demonstrating that . . . jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims.  *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong.  Therefore, the Court will deny Petitioner a certificate of appealability.  Moreover, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous.  *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

11

## Conclusion

The Court will enter a judgment dismissing the petition and an order denying a certificate of appealability.

Dated:   August 18, 2021              /s/ Ray Kent
                                                                  Ray Kent
                                                                  United States Magistrate Judge